UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JENNIFER LYNN BOWERMAN,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,<br><br>　　　　　　Defendant. | CIV. 15-5092-JLV<br><br>ORDER |

**INTRODUCTION**

On December 28, 2015, plaintiff Jennifer Lynn Bowerman filed a complaint appealing the final decision of Nancy A. Berryhill,[1] the acting Commissioner of the Social Security Administration, finding her not disabled. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 8). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 10). The parties filed a JSMF. (Docket 14). The parties also filed a joint statement of disputed material facts ("JSDMF"). (Docket 15). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 16) is granted.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Fed. R. Civ. P. 25(d), Ms. Berryhill is automatically substituted for Carolyn W. Colvin as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 14) and JSDMF (Docket 15) are incorporated by reference. Further recitation of salient facts is incorporated in the discussion section of this order.

On October 1, 2012, plaintiff filed an application for disability insurance benefits alleging an onset of disability date of July 13, 2012. (Docket 14 at p. 1). On June 17, 2014, the administrative law judge ("ALJ") issued a decision finding plaintiff was not disabled. Id. at p. 2; see also Administrative Record at pp. 10-21 (hereinafter "AR at p. ____"). On October 23, 2015, the Appeals Council denied plaintiff's request for review and affirmed the ALJ's decision. (Docket 14 at p. 2). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which plaintiff timely appeals.

The issue before the court is whether the ALJ's decision of June 17, 2014, that plaintiff was not "under a disability, as defined in the Social Security Act, at any time from July 13, 2012, the alleged onset date, through December 31, 2012, the date last insured[,]" is supported by the substantial evidence in the record as a whole. (AR at p. 20) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399

3

F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to SSI benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 10-21).

4

**STEP ONE**

At step one, the ALJ determined plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of July 13, 2012[,] through her date last insured of December 31, 2012 . . . ."  (AR at p. 12) (bold omitted).

**STEP TWO**

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)."  20 CFR § 404.1520(a)(4)(ii).  "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe."  Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).  A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities.  20 CFR § 404.1521.  An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  Kirby, 500 F.3d at 707.  "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."  Id. (citation omitted).  Additionally, the impairment must have lasted at least twelve months or be expected to result in death.  See 20 CFR § 404.1509.

The ALJ found plaintiff suffered from the following severe impairments: "fibromyalgia; undifferentiated and mixed connective tissue disease; depression; mixed anxiety disorder; and mixed personality features . . . ."  (AR at p. 12) (citing 20 CFR § 416.1520(c)) (bold omitted).

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526.  If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled.  A claimant has the burden of proving an impairment or combination of impairments meet or equals a listing within Appendix 1.  Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  If not covered by these criteria, the analysis is not over, and the ALJ proceeds to the next step.

At step three, the ALJ found plaintiff's severe impairments did not meet or equal a listing under Appendix 1.  (AR at pp. 12-14).  Plaintiff does not challenge this finding.

**STEP FOUR**

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity ("RFC"). 20 CFR § 404.1520(e).  RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments.  20 CFR § 404.1545(a)(1).  In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe.

6

20 CFR § 404.1545(e).   All of the relevant medical and non-medical evidence in the record must be considered.   20 CFR §§ 404.1520(e) and 404.1545.

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (stating because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence.").   The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.' "   Guilliams, 393 F.3d at 803 (quoting Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

"In determining RFC, the ALJ must consider the effects of the combination of both physical and mental impairments."   Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003)).   As stated earlier in this discussion, a severe impairment is one which significantly limits an individual's physical or mental ability to do basic work activities.   20 CFR § 404.1521(a).

7

Plaintiff argues the ALJ committed error in determining his RFC because the ALJ failed to address the opinion of Dr. Charles Lord.  (Docket 17 at pp. 1-5).  Plaintiff claims Dr. Lord was a treating medical source that the ALJ may not ignore.  Id. at pp. 2-3.  Plaintiff highlights Dr. Lord's "extensive medical findings, including[:]"

> evidence of poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, anhedonia, psychomotor agitation or retardation, social withdrawal, decreased energy, obsessions or compulsions, intrusive recollections of a traumatic experience, persistent irrational fear, generalized persistent anxiety, and hostility and irritability.

Id. at p. 3 (citing (AR at p. 385)).  Plaintiff contends the ALJ erred by giving weight to Dr. Thomas Atkin, a non-examining psychologist.  Id.  Plaintiff argues the mental nature of her impairments heightens the importance of relying on a treating source rather than a non-treating one.  Id. at pp. 3-4 (citing Westphal v. Eastman Kodak Co., No. 05-CV-6120, 2006 WL 1720380, at *5 (W.D.N.Y. June 21, 2006)).  Plaintiff ultimately claims the ALJ was wrong not to weigh Dr. Lord's opinion pursuant to 20 CFR § 404.1527.  Id. at pp. 4-5.

The Commissioner contends the ALJ did not commit error on this point. (Docket 18 at pp. 4-8).  Defendant believes Dr. Lord's opinion was "not binding on the ALJ, who made his RFC finding after weighing all the relevant evidence in the record for the 6-month adjudicated period between July 13, 2012, and December 31, 2012."  Id. at p. 4.  Defendant claims Dr. Lord's opinions are not entitled to weight because they primarily rely on plaintiff's subjective complaints

8

and involve limited treatment.  Id. at p. 5, 7.  According to defendant, Dr. Lord's findings do not warrant weight because they relate to physical conditions and his specialty as a psychiatrist is mental conditions.  Id. at pp. 5-6.  Defendant lists several specific portions of the record undermining Dr. Lord's findings.  Id. at pp. 5-8.  Defendant argues Dr. Lord's remaining findings in the record are beyond the date of plaintiff's insured status and are inadequately supported.  Id. at pp. 6-8.

The ALJ's decision fails to consider and weigh Dr. Lord's opinions.  See AR at pp. 10-21.  The court finds this is an error of law.

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008) (quoting Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)).  "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.' "  Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016) (citation omitted) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)).  "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions."  Hamilton, 518 F.3d at 610 (internal quotation marks omitted) (quoting Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)).  "Whether

9

the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." Reece, 834 F.3d at 909 (citation omitted) (citing 20 CFR § 404.1527(d)(2)).

Dr. Lord qualifies as a treating physician of plaintiff. The Social Security Administration's regulations provide the following definition of a treating source:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 CFR § 404.1502.

During the six months at issue in this case, plaintiff visited Dr. Lord for therapy sessions on five occasions. (Docket 14 at pp. 2-4). Dr. Lord wrote notes on these sessions detailing plaintiff's condition and listing her medications. (AR at pp. 276-81). Outside that time-frame, Dr. Lord indicated plaintiff saw him for treatment approximately once per month from January 2, 2009, to May 8, 2013. (AR at p. 384). Dr. Lord's status as a psychiatrist and his "ongoing treatment relationship" with plaintiff for over three years—including this case's central time period—qualify him as a treating source. See 20 CFR § 404.1502; see also Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035-39

10

(9th Cir. 2003) (finding support for the conclusion a psychiatrist qualified as a treating source when he had less contact with the claimant than Dr. Lord had with the plaintiff in this case).

As stated above, no matter the weight the ALJ gives to a treating physician's opinion, "the ALJ must give good reasons for doing so." Reece, 834 F.3d at 909 (emphasis added) (citations omitted); see 20 CFR § 404.1527(c)(2) ("We will always give good reasons in our . . . decision for the weight we give your treating source's medical opinion."). Failing to consider a treating physician's opinion is a violation of this requirement. See Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 407-08 (6th Cir. 2009).

In Blakley, a physician named Steven Kiefer treated the claimant and the ALJ "placed nothing on the record indicating that she considered the opinion of Dr. Kiefer as a treating physician." Id. at 407. The Blakley court determined Dr. Kiefer qualified as a treating physician and "as a treating physician, any opinions Dr. Kiefer made should have been given controlling weight absent justifiable reasons—made on the record—for discounting those opinions." Id. at 408. The ALJ in Blakley erred because the court found "Dr. Kiefer is not mentioned anywhere in the ALJ's opinion." Id.

The issue here becomes whether the ALJ failed to consider Dr. Lord's opinion. The decision the ALJ issued does not mention Dr. Lord by name. See AR at pp. 10-21. The court pinpoints seven instances where the ALJ's decision refers to Dr. Lord in some way. Four times in his decision the ALJ cites Dr.

11

Lord's medical records. (AR at pp. 17-18) (citing (AR at pp. 276, 280-81, 406)). In quoting Dr. Atkin's notes, the decision mentions a "[t]reating[] psychiatrist[,]" meaning Dr. Lord. Id. at p. 18. And lastly, the decision states the ALJ based his RFC finding on "the objective medical evidence in the record" and he "considered opinion evidence in accordance with requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Id. at pp. 15 & 19.

Are these direct and indirect references to Dr. Lord enough to distinguish this case from Blakley? See Blakley, 581 F.3d at 407-08. The court finds they are not. The four citations in the ALJ's decision to Dr. Lord's records do not relate to an analysis weighing Dr. Lord's opinion. See AR at pp. 17-18. Each citation includes a non-major detail from Dr. Lord's records, and each arises during a general summary of plaintiff's medical history. See, e.g., id. ("[Plaintiff] was 'reasonably alert, cooperative, coherent, and oriented[.]'"). These citations do not constitute "specific reasons for the weight given to the treating source's medical opinion . . . ." Tyson v. Colvin, 9 F. Supp. 3d 1104, 1109 (D. Neb. 2014) (citations omitted). To be "sufficiently specific[,]" the ALJ's reasons must "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. (citations omitted). The ALJ's citations to Dr. Lord's records do not connect to any reason for giving or not giving Dr. Lord's opinion weight, so the citations fail to distinguish this case from Blakley. See Blakley, 581 F.3d at 407-08.

12

The remaining references to Dr. Lord in the ALJ's decision do not serve as analysis for the weight given to his opinion as a treating physician. The analysis on the immediately preceding point applies to the ALJ's quote of Dr. Atkin referring to Dr. Lord as a treating psychiatrist. The quote reads: "Claimant has multiple medical problems including chronic pain. (Treating) psychiatrist combines physical with mental when describing limitations." (AR at p. 18). This does not resolve the "ALJ's failure to explain his reasoning regarding [the treating physician's] opinions [and] leaves this [c]ourt unable to determine whether or how the ALJ considered [those] opinions in reaching the RFC." Vanmuijen v. Colvin, No. 2:15-CV-00355, 2016 WL 3676219, at *4 (D. Utah July 6, 2016); see Barrett v. Colvin, No. 1:15-CV-00498, 2016 WL 5660411, at *11-12 (W.D.N.Y. Sept. 30, 2016) (finding legal error when ALJ failed to weigh a treating physician's opinion even though the opinion was "conclusory and perfunctory").

The ALJ's error is not saved by his statements that the RFC "is supported by . . . the objective medical evidence in the record" and he "considered opinion evidence in accordance with the [applicable regulations.]" (AR at pp. 15 & 19). Catch-all statements like these do not substitute for actual analysis of a treating physician's opinion. See Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (remanding because ALJ failed to weigh a physician's opinion even though the ALJ "states that he made his findings 'after careful consideration of the entire record . . . .' "). In Morrison v. Astrue, the ALJ's decision lacked analysis on a treating physician's records and the court remanded the case even though the

13

ALJ stated "I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  No. 4:11CV3135, 2012 WL 760568, at *9 (D. Neb. Mar. 7, 2012) (internal quotation marks omitted) ("On remand, the ALJ must specifically address [the treating physician's] opinions as required by SSR 06-03p.").  The ALJ's broad statement in this case is almost identical to the statement in Morrison and is not specific enough to serve as analysis of a treating physician's opinion.  Id.

Not providing specific reasons on the weight the ALJ gives to a treating physician is problematic because the court is "left wondering whether the ALJ accorded some weight, little weight, or no weight to [the treating physician's] opinion, and would be clueless as [to] the reasons underlying the accorded level of weight."  Lambert ex rel. Lambert v. Comm'r of Soc. Sec., 886 F. Supp. 2d 671, 685 (S.D. Ohio 2012) (citing Blakley, 581 F.3d at 406-07).  "The [c]ourt cannot simply **presume** that the ALJ relied on [the treating physician's] opinion unless there is some basis in the record to do so."  Santistevan v. Colvin, No. 14-CV-00895, 2015 WL 2106114, at *3 (D. Colo. Apr. 28, 2015) (emphasis in original).  As both parties indicate in their briefs, "it is not the role of this [c]ourt to weigh the evidence; that is the exclusive province of the Commissioner."  Barrett, 2016 WL 5660411, at *12; (Docket 18 at p. 4); (Docket 19 at p. 4) (citing Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007)).

As set forth above, defendant presents many possible grounds for the ALJ to decide Dr. Lord's opinion deserves little or no weight. (Docket 18 at pp. 4-8). For those arguments to apply, the ALJ would need to actually consider and weigh Dr. Lord's medical opinion. Defendant's arguments do not justify the complete absence of analysis on the opinion of Dr. Lord. See Evans v. Astrue, No. 4:08CV3266, 2010 WL 1664973, at *10 (D. Neb. Apr. 22, 2010) (denying *post hoc* justifications discrediting a physician's opinion when the ALJ failed to consider the opinion). The court "is concerned with what the ALJ actually considered." Id. Defendant's arguments are unavailing because the court still "cannot determine that the ALJ would necessarily have assessed the same RFC had he considered and evaluated [Dr. Lord's] opinions." Neeson v. Colvin. No. 2:12-CV-51, 2013 WL 5442911, at *12 (E.D. Mo. Sept. 30, 2013).

This case shares similarities with other cases not requiring remand, but those cases involve less significant error. In Nowling v. Colvin, the ALJ did not address the testimony of a non-medical witness. 813 F.3d 1110, 1121-22 (8th Cir. 2016). The Nowling court acknowledged "general[ly] such an omission need not lead our court to reverse an ALJ's otherwise-supported decision." Id. at 1121 (citations omitted). This principle is inapplicable to this case because the underlying regulation prohibits the ALJ from completely omitting consideration of Dr. Lord's opinion. Reece, 834 F.3d at 909 (citations omitted); see 20 CFR § 404.1527(c)(2).

15

In another case, Welsh v. Colvin, the ALJ failed to "identify the specific weight" for a treating physician's opinion. No. 4:14 CV 1283, 2015 WL 4959285, at *18 (E.D. Mo. Aug. 19, 2015). The court did not remand the case because not identifying a weight given to the opinion was "[a]t best[] . . . a deficiency in the ALJ's opinion-writing technique, and not a substantive error in the ALJ's analysis or conclusions." Id. (citations omitted). But the ALJ in this case did not merely fail to attribute a certain level of weight to Dr. Lord's opinion—the ALJ's decision did not consider Dr. Lord's opinion in the first instance. See Julian v. Colvin, No. CIV-12-1275, 2014 WL 258763, at *4 (W.D. Okla. Jan. 23, 2014) (finding more than a "merely technical" error when the ALJ failed to consider a treating physician's opinion). The error in this case surpasses the error in Welsh. Id.

Failing to consider and weigh Dr. Lord's opinion is not a harmless error. It is contrary to the regulation requiring good reasons when addressing the opinion of a claimant's treating physician. Reece, 834 F.3d at 909 (citations omitted); see 20 CFR § 404.1527(c)(2). The error prevents the court from determining whether substantial evidence supports the ALJ's decision. See Blakley, 581 F.3d at 410. Remanding the case is necessary to resolve the ALJ's error. See id. (remanding a case for the same error); Adorno, 40 F.3d at 48 (same); Lambert, 886 F. Supp. 2d at 685 (same); Barrett, 2016 WL 5660411, at *12–13 (same); Vanmuijen, 2016 WL 3676219, at *4 (same); Santistevan, 2015 WL 2106114, at *3 (same); Johnson v. Colvin, No. 13-CV-1687, 2014 WL

16

3672877, at *3 (D. Colo. July 23, 2014) (same); Julian, 2014 WL 258763, at *4 (same); Neeson, 2013 WL 5442911, at *12 (same); Morrison, 2012 WL 760568, at *9 (same); Evans, 2010 WL 1664973, at *10 (same).

## ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion (Docket 16) is granted.

IT IS FURTHER ORDERED that pursuant to sentence four of 42 U.S.C. § 405(g) the case is remanded to the Commissioner for rehearing consistent with this decision.

Dated March 22, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

17